UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Adekunle Kuku,<br><br>Plaintiff,<br><br>v.<br><br>Capella University, Capella Education Company and Capella University, Inc.,<br><br>Defendants. | Court File No. 23-cv-3591 (PJS/DJF)<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S AMENDED COMPLAINT** |

For their Answer to the Amended Complaint of Plaintiff Adekunle Kuku ("Plaintiff"), Defendants Capella University, Capella Education Company, and Capella University, Inc. (collectively, "Capella"), state and allege as follows:

## GENERAL DENIAL

Capella denies each and every allegation contained in Plaintiff's Amended Complaint unless specifically admitted herein.

### *New Count 1: EDUCATION AND TITLE VI OF THE CIVIL RIGHTS ACT OF 1964*

1. Capella denies all allegations contained in Plaintiff's "New Count 1: Education and Title IV of the Civil Rights Act of 1964" section because this claim has been dismissed pursuant to the Court's Order dated January 31, 2025. (ECF No. 102.)

2. As it relates to the section on "Plaintiff's Academic Progression and Administrative Withdrawal," Capella admits Plaintiff's allegation in Paragraph 1 that he was deployed in January 2018.

3.      Capella denies Plaintiff's claim in Paragraph 1 of this section that "[t]he academic calendar for the winter of 2018 and fall of 2018 allows for the continuation of my dissertations progress because there was no need for any action from my Mentor or the Plaintiff." While by its nature a dissertation involves extensive self-study and work, learners were expected to submit plans of action ("POA") every quarter during the dissertation-writing phase setting forth what they intended to accomplish each quarter. Moreover, as laid out in the October 2017 PhD Dissertation Process Manual 3.1, Capella expects each dissertation learner to "complete at least one Dissertation Milestone per quarter (with the exception of Milestone 8, which is expected to take longer)":

### Dissertation Milestones

Every dissertation is unique, but the dissertation process moves through a similar sequence of steps for all learners. Capella refers to these steps as *milestones*. Progress in the dissertation is measured by progress through the milestones. In the dissertation courseroom, each milestone is associated with a specific assignment.

While it is generally expected that you complete at least one Dissertation Milestone per quarter (with the exception of Milestone 8, which is expected to take longer), the time required to complete each dissertation milestone may vary. The speed of progress depends on the nature of the research plan and how quickly, carefully, and effectively the learner applies academic and research competencies. The 16 dissertation milestones are listed below.

| Milestone | Description | Milestone | Description |
|---|---|---|---|
| 1 | Research Ethics Education Completion | 9 | Mentor-Approved Chapters 3, 4, and 5 |
| 2 | Topic Approval | 10 | Committee-Approved Dissertation |
| 3 | Mentor-Approved Research Plan | 11 | School-Approved Dissertation |
| 4 | Committee-Approved Research Plan | 12 | Doctoral Publications Review[1] |
| 5 | Scientific Merit Approval | 13 | Final Conference Call |
| 6 | Institutional Review Board (IRB) Approval | 14 | Final Manuscript Approval |
| 7 | Pre-Data-Collection Conference Call | 15 | Manuscript Submitted for Publication |
| 8 | Mentor-Approved Chapters 1 and 2 | 16 | Dean's Final Manuscript Approval |

[1] Formerly known as "Format Editing" Completion

(**Exhibit 1, at p. 10**.) Plaintiff began the dissertation-writing phase of his program in Summer Quarter 2017. (**Exhibit 2**.) A year later, in Summer Quarter 2018, he was still on Milestone 2. (**Exhibit 3**.)

4.      Capella denies Plaintiff's allegation in Paragraph 1 of this section that he did not register for the Winter 2018 or Fall 2018 Quarters. Capella affirmatively denies that Plaintiff did not register for Summer Quarter 2018. On June 16, 2017, Plaintiff was informed that during the dissertation-writing phase of his program, he would be "enrolled in doctoral auto-registration" with the ability to "opt out":

> You will be enrolled in doctoral auto-registration, which allows Capella to register you each quarter for the remainder of your program. If you prefer to opt out of the doctoral auto-registration, please contact Academic Advising.

(**Exhibit 5**.) Capella's records do not indicate that Plaintiff chose to opt-out of the auto-registration program. Thus, Plaintiff was enrolled in Winter Quarter 2018, Spring Quarter 2018, and Summer Quarter 2018 through auto-registration. Moreover, Capella would have notified him of that registration each of those quarters. Plaintiff did not apply for military leave or seek to take time off for Winter Quarter 2018, Spring Quarter 2018, or Summer Quarter 2018.

5.      Capella lacks sufficient information to admit or deny that Plaintiff was unable to conduct research while deployed. However, Capella affirmatively states that Plaintiff submitted a POA for Winter Quarter 2018 and received a satisfactory grade for that quarter despite being deployed. (**Exhibit 2**.) Capella further affirmatively states that Plaintiff submitted a POA and earned a satisfactory grade in Spring Quarter 2018 while deployed. (*Id.*) Capella also affirmatively states Plaintiff was able to take Fall Quarter 2018 off without any penalty, and that under its policies Plaintiff could have taken up to three

3

consecutive quarters off at a time without penalty. (*Id.* (indicating no course or grade in Fall Quarter 2018).)

6. As to the section entitled "Plaintiff Unable to Conduct Research Work in Afghanistan," Capella lacks sufficient information to admit or deny that Plaintiff began immediately receiving treatment from the VA Hospital East Orange New Jersey. However, Capella affirmatively states that Plaintiff actively submitted a POA for Summer Quarter 2018. Capella denies the allegation that Plaintiff did not register for Winter Quarter 2019. Instead, Capella affirmatively states that because Plaintiff had received a non-satisfactory ("NS") grade in Summer Quarter 2018 (his last active quarter), Plaintiff was taken off of auto-registration and had to contact Capella to request to register for Winter Quarter 2019, and Plaintiff chose to register for that quarter despite warnings from Capella that a second consecutive NS grade would result in his administrative withdrawal. Indeed, Plaintiff sent an email to Capella specifically stating he had "returned from Afghanistan on the 22th (*sic*) of November" and was "ready to continue with [his] studies." (**Exhibit 4**.)

7. As to the section entitled "Plaintiff's Administrative Appeal, Request for Retroactive Military Leave, and Ombuds Complaint," Capella admits that Plaintiff appealed the administrative withdrawal, and the appeal was denied. Capella also affirmatively states that following the denial, Plaintiff informed Capella that he had been deployed during Winter Quarter 2019 (which contradicted his email that he had returned from deployment on November 22, 2018, and was ready to continue with his studies), and Capella proceeded to evaluate Plaintiff's eligibility for retroactive military leave in either of the two quarters for which he received an NS grade, *i.e.*, Summer Quarter 2018 and

4

Winter Quarter 2019. Capella determined that Plaintiff did not provide sufficient documentation to support retroactive military leave for Summer Quarter 2018 and he was determined to be ineligible for military leave for Winter Quarter 2019 because he was no longer on active duty. Capella denies all remaining allegations related to Winter Quarter 2019 because they have been dismissed pursuant to the Court's Order dated January 31, 2025. (ECF No. 102.)

8. As it relates to the email communications incorporated into the Amended Complaint, including paragraphs numbered 1-6, Capella states the emails speak for themselves and denies all of Plaintiff's allegations that fall outside the four corners of those emails.

9. As it relates to the March 22, 2019 Letter of Administrative Withdrawal referenced in paragraph 7, Capella states the document speaks for itself and denies all of Plaintiff's allegations that fall outside the four corners of that document.

10. As it relates to the email from Jack J. Daitol in paragraph 8, Capella states the email speaks for itself and denies all of Plaintiff's allegations that fall outside the four corners of that email.

11. As it relates to the allegation that Capella lied about the Minnesota VA requirements in paragraph 9, Capella denies the allegation.

*New Count 2: 20 U.S. CODE § 1091c – READMISSION REQUIREMENT FOR SERVICEMEMBER*

12. Capella denies all allegations related to Winter Quarter 2019 contained in Plaintiff's "New Count 2: 20 U.S. Code § 1091c – Readmission Requirement for

Servicemember" section because claims relating to Winter Quarter 2019 have been dismissed pursuant to the Court's Order dated January 31, 2025. (ECF No. 102.)

13.     As to paragraph (a), Capella admits that Plaintiff was on active duty from January 2018 to November 2018. Capella affirmatively states that Plaintiff was enrolled at Capella during this same timeframe, and submitted work and received the following grades: Winter Quarter 2018 (satisfactory), Spring Quarter 2018 (satisfactory), and Summer Quarter 2018 (not satisfactory). (**Exhibit 2**.)

14.     As to paragraph (b), Capella denies the allegation that Plaintiff was discriminated against based on his military service. Capella affirmatively states that Plaintiff was allowed to resume his studies following the completion of his military service when Plaintiff affirmatively reached out to Capella and sought re-enrollment for Winter Quarter 2019. Plaintiff did not need to seek "re-admission" to Capella for Winter Quarter 2019 because he was still an active learner; rather, he simply had to contact Capella and inform Capella that he was "ready to continue with my studies." (**Exhibit 4**)

15.     As to paragraph (c), Capella lacks sufficient information to admit or deny that Plaintiff's absence was necessitated by his military service. Capella affirmatively states that Plaintiff elected not to affirmatively apply for military leave prior to deployment, that Plaintiff submitted work and received satisfactory grades while on deployment in Winter Quarter 2018 and Spring Quarter 2018. Capella also affirmatively states that while Plaintiff was on deployment, Capella and Plaintiff communicated between March 20, 2018 and August 29, 2018, regarding his studies at Capella, including as follows:

- On March 20, 2018, Capella's doctoral advisor contacted Plaintiff regarding his lack of progress on his dissertation. (**Exhibit 6**.)

- On May 18, 2018, Plaintiff informed Capella that he had submitted his research plan. (**Exhibit 7**.)

- On June 18, 2018, Plaintiff informed his doctoral advisor that he had been in touch with his mentor and that "I will need to change my research topic and strategy." (**Exhibit 8**.)

- On August 4, 2018, Plaintiff congratulated his doctoral advisor on her new position. (**Exhibit 9**.)

- On August 29, 2018, Plaintiff's new doctoral advisor reached out to him to see if he needed any assistance since he was now in his fifth quarter of the dissertation-writing phase. (**Exhibit 10**.)

16. Capella affirmatively states that Plaintiff was able to take Fall Quarter 2018 off without any penalty and could have remained on leave without any penalty for two more consecutive quarters.

17. As to paragraph (d), Capella denies that Plaintiff gave advance written notice of his service to Capella. Capella affirmatively states that Plaintiff did not request military leave until after he received his first NS grade in Summer Quarter 2018.

18. As to paragraph (e), Capella admits that Plaintiff's length of absence was under five years.

19. As to paragraph (f-h), Capella admits that Plaintiff affirmatively announced his intention to resume his studies after returning from Afghanistan on November 22, 2018, despite Capella warning him that a second consecutive NS grade would result in his administrative withdrawal. Capella also affirmatively states that Plaintiff was allowed to resume his studies.

20. As to paragraph (i)(a-c), Capella denies any allegation that Capella delayed Plaintiff's ability to resume his studies or that there was a change in Plaintiff's academic status based on his military service. Capella affirmatively states that Plaintiff failed to meet academic standards, resulting in consecutive NS grades for Summer Quarter 2018 and Winter Quarter 2019.

### *New Count 3: DECLARATORY JUDGMENT*

21. Capella denies all allegations contained in Plaintiff's "New Count 3: Declaratory Judgment" section because this claim has been dismissed pursuant to the Court's Order dated January 31, 2025 (ECF No. 102.)

### *New Count 4: PRO-VETERAN CANON AS AN ESSENTIAL TOOL OF STATUTORY INTERPRETATION*

22. Capella denies all allegations in Plaintiff's "New Count 4: Pro-Veteran Canon as an Essential Tool of Statutory Interpretation" section because this claim has been dismissed pursuant to the Court's Order dated January 31, 2025. (ECF No. 102.)

23. As it relates to the section on "the Pro-Veteran Canon as an Interpretative Tool to Favor Veteran[s]," Capella states the case law speaks for itself.

24. As it relates to the section on "Pro-Veteran Canon as an Essential Tool of Educational Benefit," Capella denies the allegation that it was discriminating against a servicemember. Capella affirmatively reiterates Plaintiff's prior admission that he is "not accusing Capella of [a] failure to deliver what [Plaintiff reasonabl[y] believe[d] or consider[ed] an appropriate service," nor is Plaintiff "challenging Capella's right to enforce [its] policy." Capella further states the law speaks for itself.

*New Count 5: PLAINTIFF[] SEEK[S] EQUITABLE MONETARY RELIEF*

25. Capella denies all allegations in Plaintiff's "New Count 5: Plaintiff[] Seek[s] Equitable Monetary Relief" section because this claim has been dismissed pursuant to the Court's Order dated January 31, 2025. (ECF No. 102.)

## AFFIRMATIVE DEFENSES

1. Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted, including but not limited to that no private right of action exists for a claim under 20 U.S.C. § 1091c.

2. Plaintiff's claims are barred by the doctrine of estoppel and waiver.

3. Plaintiff's claims are barred by the doctrine of unclean hands.

4. Plaintiff's claims are barred by the statute of limitations.

5. Plaintiff's claims are barred, either in whole or in part, by the doctrines of laches, waiver, and/or estoppel.

6. Plaintiff's claims are barred by Plaintiff's own conduct.

7. Plaintiff's claims are barred by the doctrine of unjust enrichment.

8. The relief sought by Plaintiff's Amended Complaint is barred, in whole or in part, by weighing the equities.

9. The relief sought by Plaintiff is barred, either in whole or in part, by Plaintiff's own unclean hands and/or doctrine of in pari delicto.

10. Capella serves the right to supplement its Answer and Affirmative Defenses to the Amended Complaint and to raise additional affirmative defenses if facts are disclosed in discovery making any such defenses applicable.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant respectfully requests that the Court enter judgment as follows:

That Plaintiffs' Amended Complaint against Capella be dismissed with prejudice and on the merits;

That Plaintiff recover no damages, costs, or attorneys' fees;

That Capella be awarded its reasonable expenses of litigation (to the extent available), costs and disbursements; and

That Capella be awarded such other and further relief as the Court deems just, proper, and equitable.

Dated:  February 14, 2025                **MASLON LLP**

By: */s/ Peter C. Hennigan*
    Peter C. Hennigan (#031089X)
    Carly J. Johnson (#0402704)
    Anna F. Barton (#0401158)
225 South Sixth Street, Suite 2900
Minneapolis, MN  55402-4140
(612) 672-8200
Email:   peter.hennigan@maslon.com
        carly.johnson@maslon.com
        anna.barton@maslon.com
**ATTORNEYS FOR DEFENDANTS**